**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BALJINDER SINGH (A-No. 240-430-085),<br>Petitioner,<br>v.<br>ANDREWS, et al.,<br>Respondents. | Case No. 1:26-cv-07816-JLT-EGC<br>ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS; DENYING THE MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; AND ORDERING PETITIONER'S IMMEDIATE RELEASE<br>(Docs. 1, 2) |

## I. INTRODUCTION

Before the Court is Baljinder Singh's request for a temporary restraining order (Doc. 2), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) The government filed a response to the TRO and the underlying petition, asserting that Petitioner is detained under 8 U.S.C. § 1226(a). (Doc. 6.) For the reasons set forth below the Court, **GRANTS** the habeas petition.[1]

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing, and whether the parties sought additional briefing on the habeas petition. (Doc. 5.) Neither Petitioner nor Respondents request a hearing or further briefing. (Doc. 6 at 1; Doc. 7 at 11.) Thus, the Court decides the case on the underlying habeas petition on the present record.

individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III. FACTUAL BACKGROUND

Petitioner is from India. (Doc. 6-1 at 1.) Petitioner entered the United States in May 2023, where he was encountered by Customs and Border Protection. (*Id*. at 3.) The next day, the Department of Homeland Security issued a Notice to Appear charging Petitioner as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. (Doc. 6-4 at 1.) Petitioner was then released on an Order of Recognizance pursuant to Alternatives to Detention. (Doc. 1-3 at 2–5; Doc. 6-1 at 2.) Petitioner's removal proceedings are ongoing, and he is not subject to a final order of removal. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited October 6, 2026). Soon after his initial release, Petitioner applied for asylum and work authorization. (*See* Doc. 2 at 2.) Although Petitioner's asylum application remains pending, Petitioner was approved for work authorization and remains gainfully employed. (*Id*.) Petitioner has no criminal history. (*Id*.; *see* Doc. 6-1 at 3.)

On September 15, 2026, ICE directed Petitioner to appear for an unscheduled appointment to complete paperwork. (Doc. 2 at 2.) On September 19, 2026, Petitioner reported to the Fresno Enforcement and Removal Operations office as directed and was subsequently arrested by ICE. (Doc. 6-1 at 2.) That day, DHS issued an I-200 administrative warrant for Petitioner's arrest and a notice of custody determination. (Doc. 6-2; Doc. 6-3.) Petitioner was then transferred to the Golden State Annex Facility in McFarland, California, where he remains. (Doc. 1 at 6.)

According to Respondents, ICE arrested the Petitioner due to alleged ATD violations. (Doc. 6 at 2; Doc. 6-1 at 2.) Specifically, the I-213 indicates that Petitioner missed five biometric check-in appointments and failed one virtual home visit on March 3, 2025, March 24, 2025, May

5, 2025, October 8, 2025, March 18, 2026, and May 13, 2026, resulting in a total of six alleged ATD violations. (Doc. 6-1 at 2.) Petitioner disputes these allegations and explains that he reported for his check-in appointments through SmartLINK every Wednesday of the month, personally reported to ICE approximately once a month, and was present for ICE home visits occurring approximately once a month. (Doc. 7-1, ¶¶ 4–8.) Petitioner claims that whenever SmartLINK generated errors, Petitioner specifically raised those problems with ICE during his in-person reporting and ICE repeatedly told him that its records reflected successful receipt of his photographs. (*Id*. at ¶¶ 7–8.) As to the most recent alleged violation on May 13, 2026, Petitioner recalls uploading his photograph that morning, receiving a scheduled ICE home visit that same day, and asking whether ICE received his photograph, to which ICE responded yes. (*Id*. at ¶¶ 13–16.) Not once did ICE tell him that he was noncompliant with his ATD reporting requirements and it was not until Respondents filed their response in the underlying case that Petitioner become aware of these allegations. (*See id*. at ¶ 23–24.)

As such, Petitioner argues that his declaration is in direct dispute with Respondents' representation of facts on the I-213 and challenges Respondents' failure to submit substantive evidence of the alleged violations, such as SmartLINK records, biometric reporting logs, and screenshots or electronic records displaying failed submissions. (Doc. 7 at 4–6.) Petitioner argues that the decision by ICE not to arrest him until September 2026, rather than May 2026 (e.g., the date of his most recent alleged violation), is "telling," thereby suggesting that his arrest was pretextual.[2] (*See* Doc. 7 at 6.)

---

[2] Petitioner further states that he never "agreed to a consensual interview in the English language" as portrayed on the I-213. (Doc. 7 at 7; *see* Doc. 6-1 at 3.) As such, he argues that any statements attributed to him on the I-213 resulting from that "interview" are erroneous. (Doc. 7 at 7.) Specifically, he declares that he was never interviewed by Officer Rodriguez as described in the I-213, does not speak English sufficiently to participate in the English-language interview described, and that when officers took him into custody, he expressly told them that he spoke Punjabi and requested a Punjabi interpreter, but no such interpreter was provided. (*Id*.; *see* Doc. 7-1, ¶ 25–32.) Therefore, Petitioner argues that these inconsistencies render the I-213 unreliable and thus, this Court should not treat the I-213 as dispositive related to the ATD violations. (Doc. 7 at 7.) Though the I-213 may not be entitled to a presumption of reliability, that does not mean that the I-213 cannot be considered in deciding the present case. *See United Farm Workers, et al., v. Noem, et al.*, 829 F. Supp. 3d 801, 841–42 (E.D. Cal. 2026) (explaining that the disputed portions of the I-213s were not entitled to a presumption of correctness but were nonetheless admissible under Fed. R. Evid. 803(8) as to the reporting officer's own observations) (citing *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 692 n.4 (9th Cir. 2021)).

On September 23, 2026, Petitioner filed a TRO and petition for writ of habeas corpus, arguing that his re-detention without pre-deprivation hearing and notice violated his Fifth Amendment due process rights. (*See* Doc. 1 at 21–29; Doc. 2 at 4–10.) On September 30, 2026, Respondents filed an opposition conceding that under *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026), Petitioner's detention is governed by 8 U.S.C. § 1226(a) and entitled to a custody redetermination hearing before an immigration judge. (Doc. 6 at 1–2.) However, Respondents argue that Petitioner's re-detention without pre-deprivation notice and hearing was justified due to his ATD violations; thus, immediate release is not warranted in this case. (*Id.*) On October 1, 2026, Petitioner filed a reply. (Doc. 7.)

**IV. DISCUSSION**

As Respondents concede, Petitioner's detention is governed by 8 U.S.C. § 1226(a) as an individual formerly encountered upon entry into the United States and released into the interior of the country on his own recognizance. *See e.g.*, *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026); *J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO, 2025 WL 2938808, at *3–6 (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut,* No. 1:25-CV-01228-JLT-SAB (HC), 2025 WL 32879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185 (E.D. Cal. Sept. 5, 2025); *Aguilera v. Albarran*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025); *Garcia v. Chestnut*, No. 1:25-CV-01907-JLT-CDB, 2025 WL 3771348 (E.D. Cal. Dec. 31, 2025); *Carlos v. Chestnut*, No. 1:26-CV-00007-JLT-SKO (HC), 2026 WL 145889 (E.D. Cal. Jan. 20, 2026). Accordingly, Petitioner's re-detention after three years of release without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment.

However, that is not the end of the inquiry. Respondents further argue that Petitioner's ATD violations justified Petitioner's re-detention without a pre-deprivation hearing. (Doc. 6 at 1–2.) Petitioner disputes these allegations, argues that he reported for monthly ICE check-ins, and indicates that ICE repeatedly told him that its records reflected successful receipt of his photographs despite SmartLINK's errors. (*See* Doc. 7-1, ¶¶ 4–8.) Though this Court would

generally order a bond hearing as the appropriate remedy in cases of alleged ATD violations, this Court finds that Respondents failed to provide sufficient, independent verifiable supporting documentation regarding the nature and substance of Petitioner's alleged ATD violations. *Cf. Bejarano v. Chestnut*, *et al.*, No. 1:25-cv-01905-JLT-SAB, 2026 WL 92018, at *2, 4–6, 7 (E.D. Cal. Jan. 13, 2026) (ordering a post-deprivation bond hearing because respondents' evidence—including a comprehensive list of the date/type of violation and a declaration from a deportation officer who referenced three exhibits from DHS records—adequately demonstrated legitimate violations and were not obviously pretextual for petitioner's arrest); *Nateros v. Chestnut, et al.*, No. 1:25-cv-01950-JLT-SKO, 2026 WL 177799, at *2, 4, 6 (E.D. Cal. Jan. 22, 2026) (ordering a post-deprivation bond hearing because respondents' evidence—including attached exhibits showing at least ten documented ATD violations and petitioner's admitted failure to comply with timely check-ins—constituted sufficient evidence and adequate rationale for re-arresting the petitioner).

Respondents' allegations of ATD violations fail to adequately show a change in circumstances such that re-detention was justified and not clearly pretextual. Petitioner's last alleged ATD violation occurred on May 13, 2026, but Petitioner was not arrested by ICE until *after* he arrived for his check-in appointment in September 2026 when ICE ran a records check. (Doc. 6-1 at 2; Doc. 7 at 6); *see Dilpreet Singh v. Andrews, et al.*, No. 1:26-cv-03299-JLT-EPG, 2026 WL 1361738, at *2–3 (E.D. Cal. May 15, 2026) ("It was not until after Petitioner arrived for a scheduled check-in appointment that ICE ran a records check and subsequently decided to detain him due to 'several violations.'"); *E.A.T.-B v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025) (ordering petitioner's immediate release where ICE's post-hoc explanation that ATD violations warranted his detention was pretextual, in part, because ICE first became aware of petitioner's alleged ATD violations a few hours before his immigration hearing). Further, Petitioner has no criminal history and there is no other indication in the record to suggest he presents a danger to the community. (*See* Doc. 6-1 at 3.)

For the foregoing reasons, the Court **ORDERS**:

1. The petition for writ of habeas corpus, (Doc. 1), is **GRANTED** for the reasons

stated in the orders cited above. Petitioner **SHALL** be **RELEASED IMMEDIATELY.**

2. The motion for temporary restraining order, (Doc. 2), is **DENIED** as **MOOT**.

3. Respondents are **ENJOINED** and **RESTRAINED** from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven days in advance and holds a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified[3];

4. The Clerk of Court is directed to serve the Golden State Annex Detention Facility in McFarland, California with a copy of this Order.

5. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: October 13, 2026

UNITED STATES DISTRICT JUDGE

[3] If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here **SHALL** be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondent's **SHALL** provide a bond hearing in the timeframe required by law.